BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

IN RE: HOTEL BOOKING ADA LITIGATIONS  MDL No. 2978

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT HOTELS AND STUFF, INC.'S MOTION TO TRANSFER**

Plaintiffs Deborah Laufer, Saim Sarwar and Janis Shumway, by and through undersigned counsel, hereby oppose the motion of Defendant Hotels and Stuff, Inc. ("Hotels and Stuff" or "Defendant") to transfer and centralize actions pursuant to 28 U.S.C. Section 1407.

As explained more fully below, Hotels and Stuff and its counsel grossly misrepresent the facts and the law and their motion is completely frivolous and lacking in merit.

I.  **Introduction**

Sarwar, Laufer and Shumway are disabled persons within the meaning of Title III of the Americans With Disabilities Act, 42 U.S.C. Sections 12181, et seq. Hotels and Stuff owns and operates the Hiland Terrace Hotel located in Irwin Pennsylvania. It reserves rooms through an online reservations system ("ORS") and, as such, is required to comply with the Regulation promulgated at 28 C.F.R. Section 36.302(e)(1)("Regulation") by, inter alia, providing the same option for booking accessible rooms as for its other rooms and by identifying the accessible rooms, features within those rooms and features at the hotel to inform disabled persons whether or not those features are truly accessible. Sarwar visited Defendant's ORS and suffered discrimination because Defendant's ORS completely failed to comply with the Regulation in any respect. On September 15, 2020, Sarwar filed an action against Hotels and Stuff for injunctive relief to bring its ORS into compliance with the Regulation, and for attorney fees, costs and

1

litigation expenses pursuant to 42 U.S.C. Sections 12188 and 12205. This action was filed in the United States District Court For The Western District Of Pennsylvania, No. 2:20-cv-01393-CB (Hereinafter "Original Case").

On October 21, 2020, Defendant commenced this Multi District Litigation action and filed a motion to consolidate the Original Case with forty other unrelated cases that involve Title III ADA actions for ORS discrimination. These forty cases each involve a different defendant, different hotel, and different online reservations systems. Also, while some of the cases involved Sarwar, many other cases involved completely different plaintiffs who never filed any action against Hotels and Stuff. For the reasons set forth below, Defendant's motion must be denied.

## II.  The Original Case Against Hotels and Stuff Has Been Dismissed

On October 27, 2020, Sarwar filed a notice of voluntary dismissal of the Original Case (W.D.P.A. no. 2:20-cv-01393-CB). Therefore, there is no active case involving Hotels and Stuff. It is no longer a Defendant in anything. Therefore, it has no interest in any of this litigation, or any other litigation. On this basis alone, its motion must be denied as moot.

## III.  Defendant Did Not Confer With The Other Defendants

John Allen Roth is the attorney for Hotels and Stuff. It does not appear that he represents any of the other defendants named in the other lawsuits. Mr. Roth filed a motion which appeared in the forty other cases, yet there is no indication that Mr. Roth never consulted or conferred with any of the other defendants or their attorneys before he to file a motion that affected their interests, interfered with their litigation, and purports to be in their interests. Indeed, the undersigned was contacted by at least one defense attorney who had no knowledge of Mr. Roth's actions until after he was served with Defendant's motion.  While some of those defendants have

not yet retained counsel, many have their own attorneys. Mr. Roth is apparently attempting to usurp other defense attorneys by taking over representation of their clients.

In this regard, Mr. Roth is in violation of the local rules of virtually every district in which he filed his motion, as each district requires that an attorney meet and confer prior to filing a motion.

### IV.     There Is No Common Question Of Fact

28 U.S.C. Section 1407(a) requires that the civil actions sought to be centralized involve one or more common questions of fact. See also *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 410 (2015). In this regard, Hotels and Stuff and its counsel, Mr. Roth, base their entire argument on a representation of law which is so unfounded and inaccurate that it can only have been made with a deliberate intent to mislead. Mr. Roth's and Hotel and Stuff's theory is this: that the plaintiffs should have sued Expedia and Booking.com, that they are indispensable parties, that the hotels are merely "sub-contractors" of these two entities, and that this somehow creates a commonality among the myriad cases involving different hotels. Defendant's Brief, p. 4. For instance, Defendant claims at p. 4, that Sarwar "entered into Terms of Use with Expedia Group as to their website's content". Conspicuously absent is any evidence or authority to support this claim. Defendant submitted no contract or other evidence that would provide any indication that any sort of "Terms of Use" arrangement was created between Sarwar and any other entity. Moreover, Defendant completely fails to provide any basis to support any claim that it or any other hotels are somehow exempt or immune from the ADA and its Regulation.

####     A.     Booking.com and Expedia Are Not Proper Parties

First, Defendant misrepresents the law when it claims that Booking.com and Expedia are

indispensable or should even be parties at all. The Regulation imposes liability on hotels for its discriminatory online system, even if operated through third parties.  28 C.F.R. Section 36.302(e)(1) (the "Regulation"), provides:

> (1)Reservations made by places of lodging. A public accommodation that owns, leases (or leases to), or operates a place of lodging shall, with respect to reservations made by any means, including by telephone, in-person, **or through a third party** -

(Emphasis added.)

Thus, the Regulation is unequivocally clear and imposes liability on hotels which operate discriminatory reservations systems through third parties.  The DOJ, which promulgated this Regulation, issued guidelines on the subject at issue. In this regard, the DOJ stated:

> Hotels and organizations commenting on their behalf also requested that the language be changed to eliminate any liability for reservations made through third parties, arguing that they are unable to control the actions of unrelated parties. The rule, both as proposed and as adopted, requires covered public accommodations to ensure that reservations made on their behalf by third parties are made in a manner that results in parity between those who need accessible rooms and those who do not.
>   Hotels and other places of lodging that use third party reservations services must make reasonable efforts to make accessible rooms available through at least some of these services and must provide these third party services with information concerning the accessible features of the hotel and the accessible rooms. To the extent a hotel or other place of lodging makes available such rooms and information to a third party reservation provider, but the third party fails to provide the information or rooms to people with disabilities in accordance with this section, the hotel or other place of lodging will not be responsible.

Guidelines for 28 C.F.R. Part 36, Nondiscrimination on the Basis of Disability in Public Accommodations and Commercial Facilities, Exhibit A attached hereto, p. 133. Thus, it is plainly clear that a hotel is directly liable for any failure of its online reservations system to comply with the Regulation, even if operated through third parties. See *Kennedy v. Siesta Inn & Suites, Inc.*, 2020 U.S. App. Lexis 31073 **7-8 (11th Cir. 2020)(hotel liable for failure to provide

4

third party ORS providers with the information required by the Regulation); *Parks v. Richard*, 2020 U.S. Dist. Lexis 127639, passim (M.D. Fla. 7/21//20)(hotel liable for discrimination through third party sites).

Moreover, the third party providers are not liable to the Plaintiff. At least one court has rejected the argument that these are indispensable parties. See *Kennedy v. New Yorker Hotel Miami, LLC*, 0:18-62897, DE 34, pp. 5-7 (S.D. Fla. 6/6/19).

The DOJ's guideline addressed the Regulation's applicability to third parties. On this point, the DOJ states:

> In the NPRM, the Department sought guidance concerning whether this requirement should be applied to third party reservations services. Comments made by or on behalf of hotels, resort managers, and other members of the lodging and resort industry pointed out that, in most cases, these third parties do not have direct access to this information and must obtain it from the hotel or other place of lodging. Because third party reservations services must rely on the place of lodging to provide the requisite information and to ensure that it is accurate and timely, the Department has declined to extend this requirement directly to third party reservations services.

*Id*. p. 78.

By this language, the DOJ made clear that the Regulation does not impose liability on third party booking systems because they do not have direct access to the information required. This information is in the exclusive possession of the hotel and any failure to comply with the Regulation is the hotel's fault.

The Statute itself is devoid of any language that would give Plaintiff a right of action against the third parties. 42 U.S.C. Section 12182(a) only imposes liability on any person "who owns, leases (or leases to), or operates a place of public accommodation." The other third party providers do not fall within any of these categories. See *Huzar v. Groupon, Inc*., 2018 U.S. Dist.

Lexis 126653, *9-11 (N.D. Ill, 2018)(applying this reasoning to hold that third parties cannot be liable to plaintiff).

Most importantly, these online reservations systems post information about the hotel that was provided exclusively by each hotel. They had no other means of obtaining the information relevant to the hotel.

Thus, no ADA plaintiff can pursue an ORS discrimination claim against Expedia, Booking.com or any other third party website provider. Rather, the proper actions are solely against the named defendants, who are owner, operator, lessor or lessee of the places of public accommodation and are thus liable for discrimination under 42 U.S.C. Section 12182.

Defendant's entire theory in support of centralization is premised on this misrepresentation of law and therefore must be denied.

### B. The Facts Of Every Hotel Case Is Different

Each case involves a completely separate hotel. Some of the cases involve different plaintiffs unrelated to Sarwar. Each hotel books rooms through entirely separate websites. Even if, for example, multiple hotels use Expedia or another common platform, their websites are completely different - with each being specific to the particular hotel. Each hotel has different types of rooms, including entirely different accessible rooms. They have entirely different accessible features (or non-compliant) features, are subject to different requirements and the information that they must provide are unique to each hotel. Moreover, the information that they either did or did not post or provide either on their own websites or the third party sites differs from one hotel to the next.

To begin, each hotel's physical compliance requirements with the architectural standards

differ, depending on when the hotel was first constructed and when alterations were made. Hotels built after January 31, 1993, are governed by 42 U.S.C. Section 12183(a)(new construction) and the architectural guidelines promulgated pursuant thereto. Any alteration made after that date must also comply with the architectural guidelines "to the maximum extent feasible". 42 U.S.C. Section 12183(b). With respect to older hotels, 42 U.S.C. Section 12182(b)(2)(A)(iv) requires that they remove barriers to the extent readily achievable. standards. *Pickern v. Best Western Timber Cove Lodge Marina Resort*, 2002 U.S. Dist. LEXIS 1709 *6 (E.D. Ca. 2002). The regulations explain that such barrier removal measures or alterations must comply with the ADAAGs to the maximum extent feasible. See 28 C.F.R. 36.304(d), 28 C.F.R. 36.402; 28 C.F.R. 36.406.[1]

The architectural guidelines which must be followed again depend on when the alteration or new construction occurred. See 28 C.F.R. Section 36.406. Any new construction or alterations which occurred between January 31, 1993 and September 15, 2010 must comply with the 1991 ADA Standards For Accessible Design. Any new construction or alterations which occurred after March 15, 2012 must comply with the 2010 ADA Standards For Accessible Design. Anything occurring between September 15 , 2010 and March 15, 2020 must comply with either standard.

With respect to the sort of information a hotel's ORS must provide, the DOJ's guideline states as follows:

> A number of these [disabled] commenters pointed out that it can be difficult or impossible to obtain information about accessible rooms and hotel features and that even

---

[1] 28 C.F.R. Part 36.304(d) provides that barrier removal measures shall comply with the requirements applicable to alterations under parts 36.402 and 36.404 through 36.406. 28 C.F.R. Part 36.406 provides that alterations must comply with either the ADAAGs or 2010 ADA Stds., depending on the date the alteration was implemented.

when information is provided it often is found to be incorrect upon arrival.... [2]

DOJ Guideline, p. 77.

> The Department recognizes that a reservations system is not intended to be an accessibility survey. However, specific information concerning accessibility features is essential to travelers with disabilities. Because of the wide variations in the level of accessibility that travelers will encounter, the Department cannot specify what information must be included in every instance. For hotels that were built in compliance with the 1991 Standards, it may be sufficient to specify that the hotel is accessible and, for each accessible room, to describe the general type of room (e.g., deluxe executive suite), the size and number of beds (e.g. two queen beds), the type of accessible bathing facility (e.g. roll-in shower), and communications features available in the room (e.g. alarms and visual notification devices....
> For older hotels with limited accessibility features, information about the hotel should include, at a minimum, information about accessible entrances to the hotel, the path of travel to guest check in and other essential services, and the accessible
> route to the accessible room or rooms. In addition to the room information described above, these hotels should provide information about important features that do not comply with the 1991 Standards. For example, if the door to the ''accessible"
> room or bathroom is narrower than required, this information should be included (e.g., door to guest room measures 30 inches clear). This width may not meet current standards but may be adequate for some wheelchair users who use narrower chairs. In
> many cases, older hotels provide services through alternatives to barrier removal, for example, by providing check in or concierge services at a different, accessible location.

DOJ Guideline, p. 78.

    The 1991 ADA Standards can be found at ada.gov/1991ADAstandards_index. The 2010 ADA standards can be found at ada.gov/2010ADAstandards_index.  These standards contain exact specifications for such things as the number of accessible rooms a hotel must have (depending on the total number of rooms), how many rooms must have roll-in showers, the requirements and positioning of grab bars, accessible lavatories, guest rooms, peep holes, commodes, maneuvering space, reach range of objects, handicap parking spaces, registration

---

[2]In *Kennedy v. Siesta Inn & Suites, Inc.*, 2020 U.S. App. Lexis 31073 *7 (11th Cir. 2020), this failure of a hotels ORS's information to match the actual conditions at the property were one reason cited by the Eleventh Circuit as a basis for reversal.

counters, pools, accessible routes and a myriad of other items, ramps, stairs, railings, elevators, etc..

Thus, each hotel was built at a different time, had alterations at different times, and are therefore subject to different standards. Each hotel has different accessible rooms and varying levels of compliance with the applicable standards. For example, any hotels constructed after 1993 which are in full compliance with the applicable regulations, have more limited requirements. For example, they can simply identify their accessible rooms and provide information regarding the sort of bed (i.e. king), the sort of bathing facility (i.e. roll-in shower), type of view (riverview, city view, pool view, balcony) etc, and then provide an option for reserving the room. They then must also include such references as "accessible pool", "accessible parking spaces", "accessible breakfast bar". This list varies, depending on what the particular hotel offers and whether or not the features are truly compliant in accordance with the applicable ADA standards.

For hotels that have conditions deviating from the applicable standards, their reservations systems must provide far more information. For example, "no pool lift", "handicap parking spaces with slope of 8%", "no curb ramps", "no accessible registration counter", "rear grab bar missing in lobby restroom", "fitness room inaccessible", "business center inaccessible", "breakfast bar inaccessible", "restaurant, lounge, tiki bar, BBQ, picnic facilities...inaccessible" - the list of features differs vastly from hotel to hotel and depends entirely on the physical conditions specific to each hotel. Fashioning appropriate injunctive relief in each case will require a physical examination of that hotel's property and comparison to the applicable standards to ensure that the proper information is then included on the hotel's ORS.

Then, with respect to each hotel, even if it does post the required information to its ORS, the next issue is whether or not the hotel properly reserves the accessible rooms for disabled persons to try to book them, as required by 28 C.F.R. Section 36.203(e)(1)(iii),(iv) and (v).

It is therefore not surprising that Defendant failed to cite a single ADA case in which centralization was granted. In *In Re Starbucks Corp., Access for Individuals with Disabilities*, 326 F.Supp.3d 1370 (MDL 2018), this Panel denied a motion for centralization of ADA claims filed in multiple districts, even though all cases involved the same plaintiff and same defendant. This Panel reasoned that:

> [E]ach action involves a different Starbucks (in one case, two Starbucks are involved), and the unique circumstances in existence at that Starbucks at the time of plaintiff's visits. Even the alleged barriers are not the same from action to action. Although in all 21 actions, one specific alleged barrier concerns the absence of a lowered, 36-inch portion of the transaction counter available for use by wheelchair users, several of the actions involve additional alleged barriers, such as an inaccessible parking space or non-ADA compliant door hardware. Starbucks does not point to any common policies or procedures at issue, and it does not suggest that there will be any common witnesses other than plaintiff himself.

Thus, if this Panel denied centralization in *Starbucks*, which involved the same parties, the difference in the violations from store to store were enough to defeat centralization. In this instance, there are multiple parties, with every defendant being different, every website being different, subject to different reporting standards. In sum, the differences in the hotel cases are far more varied. In each case, the ORS specific to that hotel must contain information that accurately reflects the accessibility conditions at that hotel. In short, the only commonality of these cases is that they all involve the same law. Beyond that, nothing is the same.

**D.     The Procedural Posture Of Every Case Is Different**

The procedural posture of the forty cases referenced by Defendant are different. Some have proceeded to the discovery stage. Some cases involve motions to dismiss. Some cases are in settlement negotiations. In some cases, no attorney for the defendant has yet been identified.

Indeed, the discovery seeks information that is specific to each hotel. In no instance is the information obtained from any defendant relevant to any other case.

**E.     There Is No Convenience**

28 U.S.C. Section 1391(b)(2) provides that venue is proper in a judicial district "in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated..." Defendant seeks to transfer forty cases to a venue where none of the above requirements are met. This will then require witnesses of forty cases to travel to a distant location with which they have no contact and participate in the finding of facts that has no relevance to them. If by contrast, one defendant takes the deposition of a plaintiff, that information can easily be shared among the respective defense attorneys. On the other hand, legal fees will increase exponentially if forty different attorneys for forty different defendants are forced to monitor each others' cases, motions and discovery.  Indeed, the only party who would enjoy any convenience or benefit whatsoever is Attorney Roth, who seeks to usurp the relationship between many defendants and their own counsel and take over representation. In light of Mr. Roth's complete failure to understand any aspect of the law that applies, the various hotel defendants would doubtless be poorly served.

**VI.     Conclusion**

For the foregoing reasons, Defendant Hotel and Stuff's motion must be denied.

Respectfully submitted,

By: /s/ Thomas B. Bacon
Thomas B. Bacon, P.A.
644 N. McDonald Street
Mt. Dora, FL 32757
tbb@thomasbaconlaw.com
954-478-7811

*Proof of Service*

I hereby certify that a copy of the foregoing was served on all counsel of record via this Panel's CM/ECF system this 30th day of October, 2020. Also, this day, the following unrepresented parties were served by first class mail:

Wilber LLC
Relax Inn
829 Berlin Turnpike
Berlin, CT 06037

Classic Mgt LLC
Sunset Inn
1600 Absecon Blvd.
Atlantic City, NJ 08401

Aarav Hospitality One LLC
Sunset Inn
1600 Absecon Blvd.
Atlantic City, NJ 08401

Darwin Distributors Inc.
Huntingdon Motor Inn
Motor Inn Dr.
Huntingdon PA 16652

Gaila Brandon
Riverview Hotel
105 Osborne Street
St. Marys GA 31558

Jerry Brandon
Riverview Hotel
105 Osborne Street
St. Marys GA 31558

Goldstar Group Inc.
Village Inn & Suites
37 S New York Road
Smithfield NJ 08205

Max Gurwicz
Quality Inn
3101 Pacific Ave.
Atlantic City, NJ 08401

By: /s/ Thomas B. Bacon